UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VILAS WALKING EAGLE,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL OFFICER DIING, individual and official capacity; CORRECTIONAL OFFICER SMITH, individual and official capacity; CORRECTIONAL OFFICER SORRENSON, individual and official capacity,<br><br>Defendants. | 4:26-CV-04140-ECS<br><br>OPINION AND ORDER RE-OPENING CASE, VACATING PREVIOUS ORDER DISMISSING CASE FOR FAILURE TO PROSECUTE AND JUDGMENT OF DISMISSAL, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, AND 1915A SCREENING |

Plaintiff Vilas Walking Eagle, an inmate at the Rapid City Minimum Center, filed a pro se civil rights lawsuit. Doc. 1. Walking Eagle filed a motion for leave to proceed in forma pauperis, Doc. 2, as well as a motion to waive filing and/or service fees, Doc. 5, but he did not supply the Court with a certified copy of his prisoner trust account report. Therefore, the Court directed Walking Eagle to submit a completed prisoner trust account report or, in the alternative, pay the full $405 civil complaint filing fee, by September 11, 2026. Doc. 7. The Court warned Walking Eagle that failure to do so would result in the dismissal of his complaint without prejudice for failure to prosecute. Id. at 2. As of September 29, 2026, this Court had not received the filing fee or a prisoner trust account report from Walking Eagle, nor had Walking Eagle otherwise responded to this Court's order. See Doc. 8 at 1. Therefore, in an order dated September 29, 2026, this Court dismissed Walking Eagle's complaint for failure to prosecute and entered a judgment of dismissal without prejudice. Docs. 8, 9.

On September 30, 2026, the day after this Court entered its judgment of dismissal, the Court received a prisoner trust account report from Walking Eagle, explaining that he had difficulties meeting the Court's previous deadline due to circumstances outside of his control. Docs. 10, 10-1. Therefore, this Court vacates its Order Dismissing Case for Failure to Prosecute and Judgment, Docs. 8, 9, and re-opens Walking Eagle's case.

## I. Motion for Leave to Proceed In Forma Pauperis

Because Walking Eagle has submitted a prisoner trust account report, this Court may now evaluate his motion for leave to proceed in forma pauperis, Doc. 2. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Walking Eagle reports an average monthly balance of $0.15 and average monthly deposits of $0.00. Doc. 10 at 1. Based on this account information, the Court grants Walking Eagle's motion for leave to proceed in forma pauperis, Doc. 2, and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C.

§ 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Because the Court grants Walking Eagle's motion for leave to proceed in forma pauperis, his motion to waive filing and/or service fees, Doc. 5, is denied as moot.

To pay his filing fee, Walking Eagle must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Walking Eagle's institution. Walking Eagle remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II. 1915A Screening

### A. Factual Background as Alleged by Walking Eagle

The events giving rise to the current action occurred at the South Dakota State Penitentiary (SDSP) on July 25, 2023. Doc. 1 at 4. Walking Eagle alleges that while he was "standing with [his] hands behind [his] back in a non-combative, non hostile and vulnerable position[,]" Aluel Diing, a correctional officer at SDSP, "deployed her OC spray on [Walking Eagle] for no reason." Doc. 1-1 at 2; Doc. 1 at 2. While Diing sprayed Walking Eagle, she "call[ed] [him] names such as 'stupid' & 'coward.'" Doc. 1-1 at 2. Smith, another correctional

officer, arrived while Diing was spraying Walking Eagle and told Diing to stop. Id. Walking Eagle alleges that Diing "paused for a moment & kept on spraying [him]." Id.

Walking Eagle was then placed in the East Hall holding cell "for over an hour without being decontaminated[.]" Id. While Walking Eagle was in the holding cell, he was in "excruciating pain" and "kept asking for help[,]" which he did not receive. Id. Walking Eagle alleges that because "they[1] did not double lock [his] cuffs" he experienced numbness in his hands because he "accidentally sat on [his] cuffs so they got tighter." Id. Walking Eagle alleges that the cuffs closing tightly "caus[ed] damage." Doc. 1 at 5. Additionally, Walking Eagle alleges that he while he was "blind & pleading for help" in the holding cell, an unidentified correctional officer was "shushing [him] & telling [him] to shut up[,]" and was also laughing at him. Doc. 1-1 at 2. Walking Eagle alleges that he was in the holding cell "for 3 hours or more before being taken to the SHU all the while [his] head/hair, back & shoulder were full of OC spray not to mention [his] face all they did was let [him] wash [his] eyes out." Id.; see also Doc. 1 at 5 (alleging that he was "not allowed to be treated" after he was sprayed). Walking Eagle also alleges that "after a[n] hour it's hot in the holding cell so while in there [he] asked for water & received none[]" and that he "kept throwing up" because he had swallowed some of the spray. Doc. 1-1 at 2. Although Walking Eagle alleges that Diing sprayed him "without provocation[,]" he also alleges that this incident occurred "in retaliation to [his] free speech." Doc. 1 at 5. But Walking Eagle does not explain how he was exercising free speech. Id.

Walking Eagle alleges that he suffered the following injuries as a result: "[n]erve damage due to cuffs shoulder damage, breathing problems have to use inhaler now." Id. at 5. Because Walking Eagle "swallowed spray & was breathing in chemicals for a extended period of time,"

[1] Walking Eagle does not specify who "they" are, although this Court understands this to be a reference to Diing, Smith, and Sorrenson. See Doc. 1-1 at 2, Doc. 1 at 5 (alleging that Diing, Smith, and Sorrenson "were present").

he also has "eye damage." Id. While Walking Eagle alleges that he "received initial help after 3 ½ hours, [he is] still in process to heal with nerve damage/shoulder damages breathing problems." Id.

Walking Eagle sues Diing and Smith in both their individual and official capacities, but does not specify whether he sues Sorrenson in his individual or official capacity. Doc. 1 at 1–3. When a plaintiff does not specifically state in which capacity he sues the defendants, the Court must apply the course of proceedings test. S.A.A. v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" Id. at 1139 (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." Id. Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. Goodwin v. Summit Cnty., 703 F. App'x 379, 382 (6th Cir. 2017); Briggs, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." S.A.A., 127 F.4th at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)). Here, it appears that Walking Eagle may have inadvertently failed to specify in which capacities he sues Sorrenson. For the sake of completeness, and for purposes of

screening, this Court liberally construes Walking Eagle's complaint to allege claims against Sorrenson in both his individual and official capacities.

As relief, Walking Eagle requests that the officers involved be terminated. Doc. 1 at 5. He also requests a total of $600,000 in compensatory and punitive damages for his "lasting injury and mental stress[.]" Id. More specifically, Walking Eagle seeks $20,000 "for nerve damage[,]" $10,000 "for mental stress/PTSD related issues[,]" and $20,000 "for breathing problems now[.]" Id.

### B. Legal Standard

The Court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights and pro se complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Walking Eagle's claims under 28 U.S.C. § 1915A.

### C. Legal Analysis

#### 1. Prison Mailbox Rule

As an initial matter, this Court must determine whether Walking Eagle's claims are barred by the statute of limitations. A complaint may be dismissed by the Court's own motion as frivolous under 28 U.S.C. § 1915(d) when it is apparent that the statute of limitations has run. Myers v. Vogal, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam) (citations omitted). Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, the United States Supreme Court has instructed courts to apply the analogous state statute of limitations. Bell v. Fowler, 99 F.3d 262, 265–66 (8th Cir. 1996) (citing Wilson v. Garcia, 471 U.S. 261, 266–68 (1985)). Under South Dakota law, "[f]ederal civil rights actions must be brought within three years after the alleged constitutional deprivation occurred." Sisney v. Best Inc., 754 N.W.2d 804, 809 (S.D. 2008) (citing SDCL § 15-2-15.2).

Because Walking Eagle was in custody at the time he filed his complaint, see Doc. 1 at 2, this Court considers whether to provide Walking Eagle the benefit of the prison mailbox rule, which provides that a document filed by a pro se prisoner is "filed" at the time the prisoner

delivers the document to the prison authorities for forwarding to the Court. Houston v. Lack, 487 U.S. 266, 276 (1988); see also Valdivia v. Sibenaller, No. C25-3030-LTS, 2026 WL 382901, at *4 (N.D. Iowa, Feb. 11, 2026) ("Under the 'prison mailbox rule,' a prisoner's § 1983 complaint is deemed 'filed' when he or she places it in the prison's internal mail system." (citing Sulik v. Taney Cnty., 316 F.3d 813, 815 (8th Cir. 2003), rev'd on other grounds, 393 F.3d 765 (8th Cir. 2005)). The Eighth Circuit has interpreted the prison mailbox rule as requiring that a prisoner submit a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting out the date of deposit in the prison's internal mail system. LeGrand v. Carpenter, No. 4:22-CV-04168-CCT, 2025 WL 276294, at *2 (D.S.D. Jan. 23, 2025) (citations omitted).

Walking Eagle's complaint was filed on July 29, 2026, but Walking Eagle included a signed and notarized verification that his complaint was executed on July 21, 2026, Doc. 1 at 11, and the envelope containing his complaint was postmarked on July 22, 2026, Doc. 3 at 1, 3. Because it appears that Walking Eagle attempted to comply with Federal Rule of Appellate Procedure 4(c)(1)(A) by submitting a notarized statement of the day he executed his complaint, the Court will give Walking Eagle the benefit of the prison mailbox rule, and will consider his claims regarding the July 25, 2023 incident on screening. See Boyd v. Payne, No. 2:22-CV-00145-BSM-JTR, 2022 WL 18144870, at *2 (E.D. Ark. Nov. 30, 2022) (applying the prison mailbox rule and finding that claims were within the statute of limitations based on the postmark on the complaint), report and recommendation adopted by 2023 WL 125032 (E.D. Ark. Jan. 6, 2023); Hardin v. Sperfslage, No. C19-0040-LTS, 2022 WL 4635979, at *1 n.1 (N.D. Iowa, Sep. 30, 2022) (applying the prison mailbox rule and assuming that the plaintiff placed the complaint into the prison mail system on the day he dated it).

**2. Individual and Official Capacity Claims for Injunctive Relief**

Walking Eagle sues Diing, Smith, and Sorrenson in their individual and official capacities and requests that the "officers involved" be terminated. Doc. 1 at 5. But in an action pursuant to 42 U.S.C. § 1983, this Court does not have authority to direct that any employee be terminated. Johnson v. MCF – St. Cloud, No. 22-CV-1299 (JRT/BRT), 2022 WL 17723807, at *6 (D. Minn. Nov. 10, 2022) ("Courts do not have authority to terminate the employment of individual Defendants."), report and recommendation adopted by 2022 WL 17721510 (D. Minn. Dec. 15, 2022); see also Npimnee v. Andrews, No. 8:23CV102, 2024 WL 3495801, at *3 (D. Neb. July 22, 2024) (collecting cases) (stating that a district court does not have the authority to terminate a state employee). Therefore, Walking Eagle's claims against Diing, Smith, and Sorrenson in their individual and official capacities for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**3. Official Capacity Claims for Monetary Damages**

Walking Eagle sues all defendants in their official capacities and requests monetary relief. Doc. 1 at 2, 5. As employees of the South Dakota Department of Corrections, Diing, Smith, and Sorrenson are employees of the State of South Dakota. Id. at 2. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, Walking Eagle's official capacity claims against defendants are construed as claims against the State of South Dakota. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not

provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. The State of South Dakota has not waived its sovereign immunity. Thus, Walking Eagle's claims against Diing, Smith, and Sorrenson in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

### 3. Individual Capacity Claims for Monetary Damages

Walking Eagle sues all defendants in their individual capacities and seeks monetary relief. Doc. 1 at 2, 5. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). In other words, Walking Eagle's individual capacity claims must allege that each individual defendant directly participated in the unconstitutional conduct or caused the conduct to occur. See Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010).

#### a. Eighth Amendment Excessive Force Claim

Liberally construing his complaint, Walking Eagle brings an Eighth Amendment excessive force claim against Diing. See Doc. 1 at 5, Doc. 1-1 at 2, 4. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" for an Eighth Amendment excessive force claim "is whether the accused officer[ ] applied force 'in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Peterson v. Heinen, 89 F.4th

628, 635 (8th Cir. 2023) (quoting Hudson, 503 U.S. at 7). In determining whether an officer used force in a "good-faith effort to maintain or restore discipline," courts consider (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat 'reasonably perceived by the responsible officials,'" and (4) "any efforts made to temper the severity of a forceful response." Id. (quoting Hudson, 503 U.S. at 7).

Here, Walking Eagle alleges that "without provocation," Doc. 1 at 5, and while Walking Eagle was "standing with [his] hands behind [his] back in a non-combative, non hostile and vulnerable position[,]" Diing sprayed him with pepper spray "for no reason[,]" Doc. 1-1 at 2. Taking all facts asserted by Walking Eagle as true, as the Court must at this stage, Walking Eagle has stated a plausible excessive force claim. Therefore, Walking Eagle's Eighth Amendment excessive force claim against Diing in her individual capacity for money damages survives screening under § 1915A.

**b. First Amendment Retaliation Claim**

Liberally construing his complaint, Walking Eagle alleges a First Amendment retaliation claim against Diing in her individual capacity for money damages because Diing sprayed Walking Eagle with pepper spray "in retaliation to [Walking Eagle's] free speech." Doc. 1 at 5. To state a First Amendment retaliation claim, Walking Eagle must first show that he engaged in a protected First Amendment activity. Aldridge v. City of St. Louis, 75 F.4th 895, 898 (8th Cir. 2023) (citing Molina v. City of St. Louis, 59 F.4th 334, 338 (8th Cir. 2023)). Walking Eagle must then point to "an adverse action that would chill a person of ordinary firmness from continuing in the protected activity." Id. at 899 (citation modified). Lastly, Walking Eagle must show that the adverse action was "a 'but-for cause' of the injury [suffered.]" Beard v. Falkenrath, 97 F.4th 1109, 1119 (8th Cir. 2024) (alteration in original) (quoting Nieves v.

Bartlett, 587 U.S. 391, 399 (2019)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." Nieves, 587 U.S. at 398.

Although Walking Eagle alleges that he was sprayed by Diing "in retaliation to [his] free speech[,]" Walking Eagle provides no facts alleging how he was exercising his right to free speech. See generally Doc. 1. The only other reference Walking Eagle makes to his First Amendment rights is in the section of the complaint instructing plaintiffs to explain what rights were violated, where Walking Eagle states "Freedom of Speech Protected in [his] First Amendment Rights." Id. at 3. But these statements, without more, fail to provide sufficient facts to plausibly allege that Walking Eagle engaged in a protected First Amendment activity. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[,]" and a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citation modified). Therefore, Walking Eagle's First Amendment retaliation claim against Diing in her individual capacity for money damages is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**c. Claim Regarding Verbal Abuse**

Walking Eagle also alleges that Diing was "verbally abusive" to him, and that she "taunted" him while he was in his holding cell. Doc. 1-1 at 4; see also id. at 2 (alleging that Diing called Walking Eagle names). Generally, however, "[n]ame calling is not a constitutional violation." Martin, 780 F.2d at 1338; see also Penn v. Arthur, No. 4:22-CV-01067-MTS, 2022 WL 17961185, at *5 (E.D. Mo. Dec. 27, 2022) (recognizing that "verbal harassment is not a constitutional violation."). Liberally construing his complaint, Walking Eagle also alleges that

this verbal abuse constituted a violation of Department of Corrections policy. Doc. 1-1 at 4. But "[a] violation of prison policy alone does not give rise to section 1983 liability." Moore v. Rowley, 126 F. App'x 759, 760 (8th Cir. 2005) (per curiam); see also Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (recognizing that "there is no § 1983 liability for violating prison policy."). Therefore, Walking Eagle's individual capacity claim for money damages against Diing regarding name calling and verbal abuse is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**d. Eighth Amendment Deliberate Indifference Claim**

Construing his complaint liberally, Walking Eagle also alleges an Eighth Amendment deliberate indifference claim against Diing, Smith, and Sorrenson because he was not allowed to wash off the OC spray[2] and because his cuffs were too tight while he was in a holding cell after the OC spray incident. See Doc. 1 at 5; Doc. 1-1 at 2. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment

[2] The Eighth Circuit has evaluated this sort of "delayed decontamination claim[]" under the deliberate indifference to a serious medical need standard. Burns v. Eaton, 752 F.3d 1136, 1140–41 (8th Cir. 2014).

decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784); see also Allen v. Mills, No. 1:16-CV-00026-SNLJ, 2018 WL 6171436, at *7 (E.D. Mo. Nov. 26, 2018) (providing that "under the deliberate indifference standard, plaintiff is required to demonstrate an objectively 'serious medical need' resulting from the inability to wash off the pepper spray." (citing Burns v. Eaton, 752 F.3d 1136, 1140 (8th Cir. 2014)). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Walking Eagle alleges that he was in "excruciating pain" while he was in the holding cell because he was not allowed to wash the pepper spray from his face[3] and because his cuffs were too tight. Doc. 1-1 at 2. He also alleges that he "kept throwing up" because he had swallowed some of the spray. Id. Therefore, for purposes of screening, this Court will assume that Walking Eagle has plausibly alleged the existence of a serious medical need. See Leonard v.

[3] Walking Eagle states that he was "not allowed to be treated" after he was sprayed. Doc. 1 at 5. But Walking Eagle also provides that he was allowed to wash his eyes, but not his face, head, hair, back, or shoulders. Doc. 1-1 at 2.

St. Charles Cnty. Police Dep't, 59 F.4th 355, 360 (8th Cir. 2023) (noting that a shower of pepper spray can constitute an objectively serious medical need (citing Lawrence v. Bowersox, 297 F.3d 727, 731–32 (8th Cir. 2002)). Walking Eagle, however, must still allege that the defendants deliberately disregarded his serious medical need. Beginning with his claim against Diing, Walking Eagle alleges that she "emptied a considerable amount of pepper spray on [him]" and that she "taunted [him] while [he] was in the holding cell." Doc. 1-1 at 4. At this time, this Court is unable to determine that Walking Eagle's deliberate indifference claim against Diing is wholly without merit, and his Eighth Amendment deliberate indifference claim against Diing in her individual capacity for monetary damages survives § 1915A screening.

But Walking Eagle does not plead sufficient facts to plausibly allege that Smith or Sorrenson demonstrated deliberate indifference. Indeed, Walking Eagle provides no facts that these defendants were aware of the existence of a serious medical need.[4] See Docs. 1, 1-1. Walking Eagle does allege that an unknown correctional officer told Walking Eagle "to shut up" when Walking Eagle was "pleading for help" in the holding cell, but he does not allege that this unknown correctional officer was Smith or Sorrenson. See Doc. 1-1 at 2. "[T]he deliberate-indifference standard is difficult to meet. It requires a highly culpable state of mind approaching actual intent to harm the inmate." Joseph v. Wheeler, 144 F.4th 1111, 1113 (8th Cir. 2025) (citation modified); see also Dantzler v. Baldwin, 133 F.4th 833, 843 (8th Cir. 2025) (providing that "[t]he level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." (quotation omitted)). Here, Walking Eagle does not plead sufficient facts to plausibly allege that Smith or Sorrenson were aware of Walking

[4] In his statement of facts, Walking Eagle alleges that Smith and Sorrenson "were present[,]" but it is not clear if Walking Eagle meant that these individuals were present when the pepper spray was deployed or if they were present when he was experiencing pain from both the pepper spray and handcuffs. See Doc. 1 at 5.

Eagle's alleged serious medical need, let alone that they were deliberately indifferent to it and possessed a mental state akin to criminal recklessness. Therefore, Walking Eagle's Eighth Amendment deliberate indifference claim against Smith and Sorrenson in their individual capacities for monetary damages is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**e. Failure-to-Intervene Claim**

Liberally construing his complaint, Walking Eagle alleges an Eighth Amendment failure-to-intervene claim against Smith. Doc. 1 at 5; Doc. 1-1 at 2. "It is well settled that, in the prison context, the [Eighth] amendment imposes various requirements on prison officials, including an obligation to restore control in tumultuous situations." Buckner v. Hollins, 983 F.2d 119, 121 (8th Cir. 1993) (recognizing that a correctional officer had a duty to intervene on behalf of an inmate being assaulted by another correctional officer). Therefore, "[a] prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate." Est. of Davis v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997) (citations omitted). The Eighth Circuit has held that "[a] prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994). The Eighth Circuit also noted, however, that there may be some circumstances where a correctional officer's failure to intervene does not constitute an Eighth Amendment violation, such as when "further intervention would threaten the health and safety of all concerned." Id. (citing Williams v. Willits, 853 F.2d 586, 591 (8th Cir. 1988)).

Here, Walking Eagle alleges that when Smith arrived on July 25, 2023, while Diing was spraying Walking Eagle with OC spray, Smith "told [Diing] to stop[,]" but that Diing "kept on

spraying [Walking Eagle]." Doc. 1-1 at 2. While Smith may have taken reasonable steps to intervene, this Court is unable to determine at this time that Walking Eagle's failure to intervene claim is without merit. Therefore, Walking Eagle's failure-to-intervene claim against Smith in his individual capacity for monetary damages survives § 1915A screening.[5]

## III. Motion to Appoint Counsel

Walking Eagle also filed a motion to appoint counsel. Doc. 3. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Walking Eagle's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Walking Eagle is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Doc. 3, is denied at this time.

## IV. Conclusion

It is therefore ORDERED:

1. That this Court's Order Dismissing Case for Failure to Prosecute, Doc. 8, and Judgment, Doc. 9, are vacated and that this case be re-opened.
2. That Walking Eagle's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

[5] As stated earlier, Walking Eagle alleges in his statement of facts that Diing, Smith, and Sorrenson "were present[,]" but it is not clear if Walking Eagle meant they were present when the pepper spray was deployed or if they were present when Walking Eagle was experiencing pain from both the pepper spray and handcuffs. See Doc. 1 at 5. To the extent that Walking Eagle also intended to bring a failure-to-intervene claim against Sorrenson, this lone statement that Sorrenson was present fails to allege enough facts regarding Sorrenson's involvement in the incident, if any, to state a plausible failure-to-intervene claim against Sorrenson. See Doc. 1 at 5, Doc. 1-1 at 2.

3. That Walking Eagle's motion to waive filing and/or service fees, Doc. 5, is denied as moot.

4. That the Clerk of Court shall send a copy of this order to the appropriate financial official at Walking Eagle's institution.

5. That the institution having custody of Walking Eagle is directed that whenever the amount in Walking Eagle's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Walking Eagle's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(2) until the $350 filing fee is paid in full.

6. That Walking Eagle's claims against Diing, Smith, and Sorrenson in their individual and official capacities for injunctive relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7. That Walking Eagle's claims against Diing, Smith, and Sorrenson in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(b)(iii) and 1915A(b)(2).

8. That Walking Eagle's Eighth Amendment excessive force claim against Diing in her individual capacity for money damages survives screening under § 1915A.

9. That Walking Eagle's First Amendment retaliation claim against Diing in her individual capacity for money damages is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

10. That Walking Eagle's individual capacity claim for money damages against Diing regarding name calling and verbal abuse is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11. That Walking Eagle's Eighth Amendment deliberate indifference claim against Diing in her individual capacity for monetary damages survives § 1915A screening.

12. That Walking Eagle's Eighth Amendment deliberate indifference claim against Smith and Sorrenson in their individual capacities for monetary damages is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

13. That Walking Eagle's failure to intervene claim against Smith in his individual capacity for monetary damages survives § 1915A screening.

14. That Walking Eagle's motion to appoint counsel, Doc. 3, is denied at this time.

15. That the Clerk shall send two blank summons forms and Marshal Service Forms (Form USM-285) to Walking Eagle so that he may cause the complaint to be served upon Diing and Smith.

16. That Walking Eagle shall complete and send the Clerk of Court summonses and USM-285 forms for the defendants. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

17. That the United States Marshals Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order, upon the defendants.

18. That the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

19. That Walking Eagle will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED October 16, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE